This case on document 2-18-0234 has been incorporated with the defendant's appellant, v. DeKalb County, v. DeKalb Public Buildings Commission, defendant's affidavit. On behalf of the defendant's appellant, Ms. Tina Marie Perez, and on behalf of the defendant's affidavit, Mr. David J. Baral. Ms. Perez, you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Tina Perez on behalf of Panel Built, who is the plaintiff's appellant in this case. Your Honors, as I'm sure you're aware, this case is no stranger to the Court. When the trial court in 2015, or 2014, granted our motion for summary judgment, we moved for sanctions based on misrepresentations DeKalb had made about the existence of a public payment bond and performance bond. The trial court in that case denied our motion for sanctions, and we appealed to this Court. This Court issued an opinion in which it stated that sanctions were perhaps warranted, and that Panel Built should be entitled to pursue its claim for all of its attorney's fees in connection with those sanctions. If it could establish that the existence of a bond was the cornerstone of a baseless defense that DeKalb had put on the case for several years. We did just that. The trial court, however, granted us some of our sanctions that we requested, but also cut off the amount of our sanctions at the time when new counsel came in for DeKalb, which was in February of 2013. We are now appealing that decision. Was that based on a change in their strategy? Their argument? Yes and no. DeKalb's counsel and DeKalb itself had represented up until that time that there was no bond, or that there was a bond, and then represented, as it ended up in third-party discovery, we discovered that there was no bond. When new counsel came into the case without seeking leave of court, she filed a motion to dismiss, even though there was an answer on file already denying that they had failed to procure a bond, and she sought to dismiss the bond claim, arguing that there were no bonds. That's when counsel changed, and that's when the strategy sort of shifted, where now DeKalb is taking for the first time, three years after it had actually returned the bonds, two years after it received notice of our statutory bond claim, and then over a year and a half after we had filed the lawsuit, they changed course in this case. Why did the mechanics lien claim fail? Initially, we prevailed on one of the mechanics lien. We had a Section 23 mechanics lien claim, and DeKalb, when we first filed the suit, agreed to voluntarily turn over the funds that it had been withholding. So it was $7,100 that they had been withholding that they voluntarily agreed to turn over, so they didn't defend that claim at all. The other mechanics lien claim we had in the case was under Section 5. We had learned that DeKalb was not requesting sworn statements under Section 5, as we thought it should have been doing under the statute, and they made a two-page argument in one of their briefs, and the court bought that, that they were not obligated to do that. The court bought that argument and ultimately dismissed that claim, but that was not the basis of the lawsuit at all. It was a very small portion of the lawsuit. It's always been about the bond. When we served our statutory lien claim and bond claim, when it was confirmed in 2010 that there was no bond, even before we filed suit, DeKalb knew it had no bond. Yet we continued to discuss with their counsel about getting the bond. He represented to us, yeah, yeah, I have the bond, and as your honors know, getting the information about the bond is important because there are certain notice requirements in the bond. So we never received a copy of that bond, so we ultimately filed suit. We had our suspicions that there was not a bond, and as it happened, DeKalb kept denying that fact before suit, after suit, and during suit. So DeKalb had completely undiscovered responses. It had denied the fact that it had failed to obtain a bond under oath signed by one of its public commissioners. It had answered pleadings in which it denied the fact that it had not obtained a bond or said that it had insufficient information about a bond. And then also in numerous communications with counsel, counsel continued to represent that there was a bond. And in fact, when it produced documents, counsel for DeKalb went so far as to produce three or four pages of the bond, not the most important information page, and also not the correspondence that indicated that the bond had actually been returned to the contractor that had originally submitted it back in 2009. So not only was this an inconsistency or overlooked something, this was an attempt to cover up the fact that there was no bond. And Mr. Hansen, who is the public commissioner, knew that back in 2009, yet continued to allow the case to go forward even after it was filed. And going back to your point, Your Honor, about when DeKalb changed course in the case when they got new counsel, you know, they did argue at first that there was no bond. When new counsel came in, she argued you don't have a bond claim because there is no bond. But that doesn't even address what the Bond Act is about. The Bond Act is precisely meant for that purpose, which is to either pursue a claim under a bond or to pursue a claim against a public entity who has not obtained a bond. So the point that she intended to dismiss the bond claim when she first came into the lawsuit doesn't rehabilitate the fact that there was misrepresentations about the bond a year and a half up until that point and even prior to the lawsuit being filed. The other arguments that DeKalb's new counsel made were similarly unavailing. The next argument that was made was, okay, yeah, there were bonds, but these were bid bonds, which is another argument that, in my opinion, borders on the disingenuous. All you have to do is look at the bonds. They say performance and payment bonds. There's no bid bond that was ever at issue in the case. And then finally, the third argument that new counsel made was that the Bond Act didn't apply because the work that was involved in this project wasn't public work as the statute defines it. But again, that is contrary to what they said in their request to admit. We specifically asked, is this a project involving X number of dollars that's public work? Both of those requests to admit were answered, admitted without objection. So although DeKalb had previously admitted that this was a public project that was subject to the Bond Act, it then changed its course again and argued that it wasn't public work. And the main crux of the argument was that the 10,000-pound mezzanine structure that our client installed in a building with concrete and bolts was not a permanent fixture to the building. So again, none of these arguments that DeKalb ultimately ended up making when new counsel came in rehabilitated the fact that it continued to make these misrepresentations before, during, and throughout the lawsuit. So it's a public – it's not a public work because it's not permanently affixed? Is that their view? That was their argument. So it's a personal thing and can be reviewed? That was their argument. And Judge Doherty considered that argument when we moved for summary judgment the third time, right before we went to trial. And he denied their argument and obviously granted ours and was then granted summary judgment in our favor. Was it Doherty that refused to grant the entire piece? It is. Did he make any mention of the fact that you – related to what you just related, which was there was two admissions on file that seemed to be contradictory with the defense that was made? He did not mention that in his ruling, Your Honor. Thank you. Because if he had, I would have asked then why. Or what was the rationale that he gave for that observation? Are you talking with respect to the motion for summary judgment? I'm talking with regard to fees and the fact that I believe he said something to the effect that it's questionable or it's close or something like that. Correct. And I was wondering if he had taken into account the fact that there had been answers to interrogatories that would have made that portion of the litigation, if not moved, at least truncated. If he did take that into consideration, he didn't incorporate it into his ruling. I know from the first time that he ruled on the motion for sanctions, he found DeKalb's conduct to be egregious, called us a victim of this vexatious conduct of the prior counsel, but in the end refused to award us any fees. So I suppose I'm glad he awarded us something this time, but our opinion has always been and our argument has always been that the representations made about the bond and the misrepresentations and the cover-up has always been the cornerstone of this case. Had we known prior to even filing the lawsuit that there was no bond, that DeKalb would have come clean to us, there's a chance that we may not have even filed the lawsuit or the lawsuit wouldn't have lasted for five, six years. If DeKalb would have come clean up front, we could have moved for summary judgment right off the bat, but that wasn't the case. Instead, DeKalb took affirmative steps to cover this up. One of the arguments that we make that Judge Doherty abused his discretion in only awarding us fees up until the time that new counsel took over is the fact that defendant here had a hand in this. Gary Hansen, who's the public commissioner, knew back in 2009 that he returned the bond, so he knew there was no bond before we even asserted our claim, before we even filed our lawsuit. And then in 2010, when he received a notice of our statutory bond claim, lien claim, he sent that off to the architect. The architect wrote him a letter back and said, no, we never procured a bond on this case. So at that point, DeKalb, with or without his counsel, knew that there was no bond, yet there were steps taken that, you know, to misrepresent that there was bond. And similarly, with respect to the request to admit, Mary Simons, I believe her name was, signed the request to admit under Oak. What could possibly be gained by making this misrepresentation? That's a good question. You know, and honestly, I've been trying to think of that for the past eight years as to why DeKalb would have done that. I mean, I think that they thought that if they had, if they represented that they had some sort of bond, that maybe we would have been out of the box with respect to notice. I really don't know. I don't understand why Mr. Farrell would make those representations, or misrepresentations, or why DeKalb would not just come clean about the fact that they didn't have a bond, unless they understood that they had some liability under the statute for not procuring a bond. And again, their architect told them in 2010 that there was no bond. So, you know, I'm not sure if they understood that they were subject to the Bond Act and that they were required to actually procure a bond, as is required under the Act. But for whatever reason, they thought that they would benefit from not informing us that there was no bond. Would you mind if we shift gears just a little bit here to address the issue of why it took and why it would be reasonable to take a year and a half to file the amended motion for sanctions? Yes, Your Honor. Well, initially, if I could address the Rule 137 argument, which counsel makes, and he claims that we had the 30 days to actually reinstate the case after mandate. You know, we argued in our briefs, and I don't want to have to rehash it too much, but Rule 137 requires that a sanctions motion be filed 30 days after final judgments have been entered or after a post-judgment motion has been filed. And if you were to read a mandate into that, into Rule 137, there would be no need for Rule 369, which governs mandates. So in this case, there was no final judgment and there was no post-judgment motion that would have triggered us filing our motion within 30 days after the mandate was issued. Now, as Your Honor points out, Rule 369 does have a reasonableness requirement where a court takes the totality of the circumstances into consideration and assesses whether the reasons provided for the delay are in fact reasonable. And Judge Doherty did that in this case. He's been our judge for the last seven, eight years on this case. He's granted extensions to DeKalb, he's granted extensions to me, and he knows what the case is about and what we've gone through in the case. When we went in front of him after counsel argued that it wasn't a reasonable amount of time to file the mandate, to reinstate the case after mandate, there were other issues that we were addressing. For example, in August of 2016, even before the mandate was issued, we had been negotiating with DeKalb about possibly settling the case because at that point, the opinion had already come down. I have correspondence here, which I didn't include in the record because we have a confidentiality agreement and the negotiations back and forth I consider to be confidential. But I have a stack of correspondence here with DeKalb that goes from August of 2016 to December of 2016. Is that in the record? It's not in the record, Your Honor. And I didn't include it in the record for the reasons that some of it contains numbers and settlement offers and demands, so I didn't think it was appropriate to include. But I can certainly provide it if Your Honors want it. But the last correspondence I have from DeKalb is December of 2016, where Mr. Amato is identified as the state's attorney. So I find DeKalb's argument now a little disingenuous, saying that there were never any settlement negotiations because there, in fact, were. And after we received this last offer from DeKalb in December of 2016, we discussed this at length with our client over the next couple of months about what, if anything, we wanted to counteroffer. And then we ultimately got back to DeKalb and told them that we were rejecting their offer in March or April of 2017. After that, I became involved with a very big trial that was happening down in Joliet in Will County that required me to travel extensively to other states to depose witnesses, to travel down to Joliet for the month of May to argue motions in limine and then ultimately for a two-week trial that happened in June. During that time, and I didn't put this in the record either because I don't like to air out people's personal business, but Mr. Bryce was hospitalized and I was as well. So that's part of the reason why we didn't file anything in the summer of 2017. After that, I was involved in post-trial briefing and as soon as I had a chance, I filed a petition. And again, Judge Doherty, having known this case, took the totality of the circumstances in consideration and found that it was reasonable, the time that we filed our motion. You'll have a chance to make rebuttal. Thank you, Your Honors. Thank you. Mr. Barol. You may proceed. Good morning, Your Honors. May it please the Court. My name is David Barol. I am Assistant State's Attorney. I handle the civil matters for DeKalb County and in this case also the DeKalb County Public Building Commission. I have the distinguished honor of being, I believe, the fourth Assistant State's Attorney to become involved in this case in one way or another. And I was quite surprised when about six months after I took my position to have this motion appear on a case that I had no prior dealings with. And I went and I sifted through boxes and I found it and I went through and I read about the history of it like you all had to go through and read about the history of it. And honest to God, I find it to be a very sad story. But the part of the story that's sad involves somebody essentially falling down. And after that point, everything changed, but the county, the defendants, are still being tied to that period of time. And it makes it very difficult in order to defend the case at this point. You're talking as if one person fell down, is that correct? I am. I am. What about the director who supposedly, not the attorney, I assume you're referring to the attorney. I am, Your Honor. What about the administrator, director who made the representation that there was a bond and then had to change his position? Did I misunderstand, Ms. Perry? Yes, I don't know of the director changing his position or anything of that sort. Who she's talking about, Gary Hansen, he's now the county administrator. At that point in time, he would have been acting as the treasurer of the PBC as well as the finance director of the county. In his deposition testimony, he talked about how he thought at the point that they did the turnover order of the $7,000 that was being held from Panoville, that he thought that that was ending the case. And when he found out that the case was continuing on, he was surprised. And when you look at all the ARDC filings, you see that there was a lot of things going on with that gentleman that were severely affecting the county, its interests, both in defense and in the claim side of things. So as far as it being a change of position of the county, I don't believe that it was a change in position of the county. I think that the county has painted into it because of the fact that their attorney is their attorney. And he's doing his work. But doesn't the client speak through its attorney? Well, yes. And idealistically, it does. Not idealistically. It does. It does. It's improper for counsel on the other side to speak to the client who is represented. Of course. So how could you not speak other than through your attorney, you being the county? Excuse me, I apologize for that. No, I understand completely. But the county only can control or speak as to what it knows is being said. And what we're seeing is that at that point in time, communication was not occurring. The county did not even know the status of the lawsuit. Isn't that the county's fault? I mean, you were not represented by outside counsel. You were represented by the DeKalb County State's attorneys office. Correct. How can you honestly say, then, we don't know what's happening? We don't know that misrepresentations are being made? Is that your position? That's what it appears occurred from the testimony. And from everybody's behavior in this case. And from the prior court decisions. It appears that's what was occurring. All the language in this case previously about the faults and the errors in regard to a bond initially, point at what counsel represented. The only testimony we have in a deposition from somebody from the county is Gary Hansen, who was surprised. Didn't know this was going on. So, I think that no matter what, you do have a breakdown there. You do have two different avenues that are occurring. And realistically speaking, a state's attorney's office and a county are two government entities. I can't tell you how a prior state's attorney's administration operated in that sense of communication. I just wasn't there. I wasn't part of it. Nonetheless, when a new state's attorney comes in, they accept the office as it is. Correct. You can't simply divorce yourself from everything that happened before and say it's not my responsibility. Right. You try to make things better. Reasonably. Yeah, sure. Yeah. But I'm not saying anything about, you had multiple administrations that were involved it went through. In fact, the gentleman at issue, he himself had been state's attorney temporarily, had been appointed a state's attorney temporarily. What about the answers to the interrogatories that seemed to be contradictory or inconsistent with the defense that was raised after Mr. Freroth departed? Well, I tell you, when it comes to, it's the request to admit, I think they were the real issue because in the request to admit it talks about bonds and public works. And those were signed by Mr. Freroth and a Ms. Simmons. I don't know who Ms. Simmons is. She wasn't opposed to the action, so there's not really any information there. But when, I'm just going to tell you how this actually broke down, okay? When it was discovered that these events were occurring with that counsel, and when it was discovered about these misrepresentations as well as others, that was the end of his career. He was removed from the office. Of course, the NRC suspended him. This has all been brought up and argued here before. After that, the state's attorney took another attorney and said, you've got to take care of this now, take over this case. She took somebody who had a murder trial and said, you've got to take care of this case. She came in the case, and she went to do cleanup work and figured out what was going on and to fight the case, right? And that's when you have the motion that was filed, motion dismissed, where she said there was no bond. Now, theoretically, if I was sitting there and looking at the whole thing, would I have probably gone and done things, you know, sought to withdraw the request to admit or do something of that angle or looked at prior answers and said, you know, those answers shouldn't stand because we all know what just happened. So that's not the facts that we're going to be going with anymore because those weren't our facts. Yeah, that would be ideal. But realistically speaking, on the ground floor, this was a disaster for the people that were there in the county trying to fix everything. Would that be the state's attorney's office or someone else trying to fix the disaster? Well, that would be the state's attorney's office who just found out one of their state's attorneys fell. So they looked at the case and they came back and they made defenses that, of course, the plaintiff doesn't agree with the defenses. They want their money. And, of course, DeKalb's view or point of it is we paid the contractor all the money. So the contractor should have paid them. Isn't that generally why you get a bond? Yeah, well, it is why you would have them get a bond. And so when you don't get a bond, that makes you more liable than if you did have a bond? And that is fair. And isn't that the whole gist of this seven-year litigation or five-year litigation? Well, but what's happening currently is about taking the issue of not having a bond and making that the sanctionable activity. And if that's what you're looking to do, well, then the sanction for that is the $54,000 that had already been paid that was paid a second time because of failure to have the bond. This isn't about sanctioning for not having a bond. And this isn't about returning the fees under the lien act, which was defeated. This is about the activities that occurred with a misrepresentation of whether they're the cornerstone of this litigation. For them to be the cornerstone of litigation, if you look at all the case law on the cornerstone of litigation, what you see is cases where somebody came in, lied off the bat, predominantly filed a complaint based off of a lie, and then ran with it, kept going, going, going. The Diane case. I mean, that's a nightmare and a half when you read that. That guy went and he made misrepresentations at the very beginning of it when he got knocked out of a contract with McDonald's. So what he decided to do was go in and say that they breached it, make a bunch of misrepresentations against that, have people perjure themselves, manufacture evidence. All sorts of crazy things occurred. Yeah, that was the cornerstone. The whole case was premised on a lie. The whole case here wasn't premised on a lie. The initial defense, while that attorney was handling the case, apparently that part was because what he said was wrong. But once he was gone and once other counsel looked at the case, they said, well, wait a second. When you look at it, the reason that we wanted to do this particular building project the way it was done was that we didn't want to have an elevator in the building. And you didn't want to have an elevator in the building under the local building code. You had to have a removable shelving system. So that was part of the design. You wanted a removable building system. Now, that didn't garner victory as far as the public works argument went. But does that have anything to do with the misrepresentation made by Mr. Farrell at the beginning of this case? No, it has nothing to do with it. It's going in the complete opposite direction. It's saying we think that this really isn't even a public work. It is a reasonable, viable defense. And I think that as case law says, and as we all know as lawyers, we have a right to zealously defend our client. Your argument has some intuitive merit. However, in the totality of the circumstances, after there's been admissions, judicial admissions, is it appropriate to make defenses that are inconsistent with the judicial admissions made, regardless of whether they're made by the Wicked Witch of the West or by Mr. Farrell or some Galahad? What difference does it make how devious the attorney is? Isn't it inappropriate, regardless of the nature and extent of the counselor that's supposedly representing your client? I would submit that ideally, as was argued earlier, if I was taking the reins at that moment, I would have gone to withdraw the documents that he filed to get a clean slate. And then if they hadn't been allowed to have been withdrawn, then would you have made the defense that you're talking about now? I quite honestly don't know how I would do that. You think this might have been such a debacle that maybe it should have been settled right then and there? I would have loved if this case would have been settled. But quite honestly, I have no means of going into that time period and looking at settlement. Do you want to address the year-and-a-half time period before counsel filed the amended motion for sanction? I do. I brought that up as a cross-appeal. And I know plaintiff doesn't feel that it has any merit, and I feel that it's actually an issue that's right. The idea that because Rule 369 controls a mandate coming back, that 137, including the mandate for that 30-day timeline, would make it so Rule 369 had no purpose, that doesn't follow to me. There's no timeline in 369. So 369's purpose is to send the mandate goes back and the trial court is revested. Okay. Then once it's revested, something still has to happen. It doesn't make any sense to me that when it comes for a sanction motion under 137, over and over and over, it's been instilled in all of us. It's 30 days. The purpose of it is to stop that lingering threat out there. And within 30 days, you're supposed to do it. You may continue. Okay, thank you. For it to come back on a mandate and that 30 days just go out the window and suddenly become a no timeline whatsoever, it just doesn't make sense. The specific timeline of 137 should apply once that mandate comes back. But isn't every motion, if a motion is timely filed, an amendment is subject to reasonableness, correct? The amendment to the, so you're saying because it's an amendment to their initial sanctions motion? Because when you send it back, having said to the trial court, you erred in dismissing this. We now reinstate it and send it back for further hearings. The motion is reinstated. It's alive. It was timely filed. There's no dispute as to that, is the way I understand the fact. The original motion. Correct. So this is an amendment. And isn't that subject to reasonableness? And what I didn't realize until oral argument today was that Judge Story has been with this case throughout. So shouldn't we defer to his determination that given the totality of this case, in all of the circumstances, in all of the delays or non-delays, that he determined it to be reasonable? I mean, isn't that entitled to quite a bit of deference? Well, of course, it does deserve deference. I would argue, though, that a year and a half to file a motion where you just say give me all the attorney's fees and don't go through any explanation of the different events that you may deserve it for, such as that time period. Well, that may be due to the merits of the motion, but whether or not it was timely, how do we find that Judge Doherty abused his discretion in determining that the amendment was timely? Not the merits of it, but the filing of it was reasonable. Show me where is there an abuse of discretion there? It was a year and a half. There were two local rules that mentioned if a case was one year or nine months, that it would automatically be basically DWP'd. This sat for so long that it was boxed up. Was that rule specifically applied to returns of mandates? No, they don't specify mandate. It's just general rules. And that's what I'm bumping into here is the lack of specificity with mandates. Counsel, did you allege any prejudice, any latches relative to the delay that prejudiced your client? The prejudice I did, not latches. We didn't make a latches argument, no. What was the prejudice? The prejudice was basically the fact that we had something that came up so long after it had been finished up that I had to go for my client and try to figure out what was going on. As this process has been going on, I've been finding new things that were known by counsel who were handling the case quite a while back, such as transcripts from hearings where it was argued that a year of the case made it so somebody couldn't have time to get up to speed on the case in order to defend it before trial. There were lots of things about this case in the time that's gone by that have been pretty hard to find. A 3,000-page record is what you're looking at, plus all the documents, notes, and stuff that we would have as the attorneys. That 3,000-page record, though, would have been there whether it's 6 months, 12 months, 18 months, 5 years, whatever, right? For you to review. Yes. So your preparation was not really affected by whether it was a short period of time or a long period of time when that amended motion was filed. Well, it was in the sense that that motion appeared, and I had to write a response to it immediately. And so... Or ask for a reasonable time to do so. But what I've been seeing in the case is that we're blamed for any time. So I was not looking to delay anything. Well, I think my point is that if it was a 3,000-page record, whether the amendment was filed within 30 days or was filed 18 months later, as you point out, the preparation is the same. You still have 3,000 pages to read, arguably. So why is that prejudicial? I think because the original question is, what was the prejudice to your client? I guess it's coming down to the prejudices by the nature of the changing of administrations and the way it works with the government bodies where you have elected attorneys that come in as opposed to private counsel. You're suggesting that a state's attorney who is incumbent should use that as a campaign slogan, keep me in office so that there's no change in administration, so that my attorneys are not put at a disadvantage? Absolutely not. I didn't think so. Any other prejudice that you can point to for this late amendment? No, no, no, no. Okay. Okay. Thank you, sir. Thank you. Your time is up. Ms. Perry, you may proceed. Thank you, Your Honor. Just picking up where counsel left off with respect to Rule 137, the interpretation by using Rule 137 would render Rule 369 superfluous. There are no cases that interpret Rule 137 the way that counsel is suggesting that it be interpreted. There's one case that counsel cites, which is the short case, but that case did not involve a mandate at all. It involved the plaintiff, or the defendant's counsel, attempting to bring a motion sanctioned against plaintiff's counsel a year after it had filed the original sanctions motion. So there are no cases out there that interpret Rule 137 in the way that counsel is suggesting that it be interpreted. With respect to DeKalb's action or inaction on the case, Mr. Amato, who is the current state's attorney, was aware of this case at least as of December of 2016 when we were negotiating a settlement. So the fact that DeKalb sat by and did nothing as well I think speaks volumes. And again, there is no prejudice here because Mr. Amato was aware of this case. He had an attorney, not the current attorney here, but he had an attorney that was assigned to this case who was knowledgeable enough to make a substantive settlement offer to us. Is that when he took office in 2016? I really have no idea of when he took office. I'm assuming so. I was dealing with, in August of 2016, I was dealing with this same counsel who is Sarah Gallagher-Shanton, the chief civil assistant state's attorney. And my initial contact with her in August of 2016, she was talking about running stuff by Mr. Schmack, who was the current state's attorney. And then when I received this communication from her in December of 2016, it indicated that Mr. Amato was the state's attorney. I don't live in DeKalb County, so I don't keep up with when the elections happen there, but I'm assuming that the election would have happened between August and December of that year. I think he was sworn in in December of 2016. But my point is, Your Honor, that Mr. Amato or someone in his office was aware that this case was out there. So whether they had to dig it out of boxes or whatnot, I don't think really would be prejudicial to have to respond to a discrete, limited issue like this, which is whether or not sanctions are warranted. With respect to counsel's comment that he would have settled this case once he learned about all of the misrepresentations that Mr. Farrell had made prior to the second state's attorney becoming involved, we did have a settlement conference with the second state's attorney after all this came out. We had a pretrial conference with Judge Doherty where Judge Doherty sat there and told her, you should settle this case. The case still didn't settle. So we did make efforts to try to settle the case after all of the misrepresentations that were made prior to February 2013 came out. And going more to that point, counsel argues that once they learned about what had happened with Mr. Farrell and all the misrepresentations, that they switched course. Well, if that was the case, they certainly didn't tell us about that. We found out all the information that we have about the misrepresentations from third parties. We received documents from the surety of this case. We received documents from the architect in this case. And we received documents from another third party that indicated that the bond here was returned and that there never was a second bond that was obtained. So Ms. Klein came into the case. The second state's attorney started making arguments that there was no bond and then switched it over to say that, oh, yeah, there were bonds, but they were bid bonds. And then continued on with a path of making these arguments that weren't well-grounded in the fact. So to sit here and say that the bond was not a central issue to the case is just plain false. It's what we've argued before, at the time we filed the suit, and during the entire lawsuit. Mr. Hansen, who's the public official that had actually returned the bonds, and there is correspondence from him, signed by him, where he actually returns the bond to his contractor, and also correspondence between him and the architect, where the architect confirms that there is no bond, did testify in connection with this case. He did say that he was surprised that the case was still pending because he thought that the case had settled when they issued the turnover order. But he also confirmed and authenticated the documents. He confirmed that there was no bond in 2009, and he confirmed it again in 2010, which was the time that they received our notice. At that time, DeKalb should have stepped up and said something. They should have said, there is no bond on this case. Well, what's your response to the statement that he thought that it was over because they paid out the $7,000? That was in connection with the voluntary turnover order for the mechanics lien claim. He said that he thought that that $7,100 payment resolved the entire case. It did. I mean, that order was entered very early on in the case. Within the first few months, it wasn't disputed. It was agreed to. It was a voluntarily agreed to turnover order. Whether or not Mr. Farrell conveyed that to his client, I don't know. But the fact that the case continued on for a number of years, and DeKalb knew nothing about it, is very surprising to me. Okay. Any other questions? Thank you. We'll take the case under advisement. There will be a short recess. There are other cases on the call.